Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

**IN THE CIRCUIT COURT FOR THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| KATRINA KELLY, deceased, by and through | ) | |
| the Personal Representative of the Estate of | ) | |
| Katrina Kelly, DOLARES NASH, and | ) | Cause No.:  2422-CC11313 |
| BYRAN MILLER, | ) | |
| | ) | |
| Plaintiffs, | ) | Division  1 |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CITY OF ST. LOUIS, JENNIFER | ) | |
| CLEMONS-ABDULLAH, individually and in | ) | |
| her capacity as Commissioner of Corrections, | ) | |
| PHYSICIAN CORRECTIONAL USA (MO.), | ) | |
| LLC, CHARMAINE LOCKETT, RONNESHA | ) | |
| WILKES, JEROME DUNNING, MELANIE | ) | |
| WEBB, LAVERNE PEARSON, JAVAN | ) | |
| FOWLKES, MARIETTA FREEMAN, | ) | |
| KHADIJAH GHANI, TIFFANY FISHER, | ) | |
| KAREN CARPENTER, and Doe/Unknown | ) | |
| PC USA STAFF, | ) | |
| **Serve:  By Special Process Server** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## <u>FIRST AMENDED PETITION FOR WRONGFUL DEATH, NEGLIGENCE, MEDICAL NEGLIGENCE, AND VIOLATION OF CIVIL RIGHTS</u>

COMES NOW Plaintiffs Katrina Kelly, deceased, by and through the Personal

representative of the Estate of Katrina Kelly, Delores Nash, as surviving parent of Katrina Kelly,

and Bryan Miller, as surviving spouse of Katrina Kelly, individually and on behalf of the

wrongful-death class (collectively "Plaintiffs"), by and through counsel, and for their First

Amended Petition against Defendants City of St. Louis, Jennifer Clemons-Abdullah, Charmaine

Lockett, Ronnesha Wilkes, Jerome Dunning, Melanie Webb, Laverne Pearson, Javan Fowlkes,

Physician Correctional USA (MO.), LLC, Marietta Freeman, Khadijah Ghani, Tiffany Fisher,

Karen Carpenter and Doe/Unknown PC USA Staff (collectively "Defendants") state as follows:

1

**EXHIBIT**

**A**

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

## INTRODUCTION

1. This action arises from the death of Katrina Kelly ("Kelly") while she was a pretrial detainee in the custody, control, supervision, and/or care of Defendants at the St. Louis City Justice Center ("Justice Center").

2. On or about August 13 or 14, 2024, Kelly was arrested and detained at the Justice Center pending resolution of criminal charges.

3. On August 24, 2024, while detained in the Justice Center, Kelly suffered an obvious, life-threatening medical emergency involving hanging, asphyxia, respiratory arrest, and cardiac arrest.

4. Kelly was found in her cell unresponsive and hanging by the neck utilizing a laundry bag affixed or tied on one end to the ladder of the bunk of her cell bed and tied or wrapped around Kelly's neck from the other end.

5. Before Kelly was found unresponsive and before adequate emergency response occurred, other detainees communicated to Justice Center staff that Kelly was hanging, that she needed immediate assistance and life-saving medical care, and specifically requested that Defendants and their staff respond immediately.

6. Those communications continued for a prolonged period of time before Defendants took reasonable action.

7. Kelly was hanging, unconscious, unresponsive, pulseless, apneic, and/or in obvious medical distress for an extended period of time before Defendants initiated and provided adequate emergency medical care.

8. Justice Center correctional staff, its contracted private medical provider and medical personnel knew, or the emergency was so obvious that knowledge may be inferred, that Kelly was suffering from an immediate, life-threatening medical emergency requiring immediate

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

entry, rescue, CPR, ventilation, oxygenation, emergency medical equipment, emergency medication, EMS notification, and prompt EMS access.

9.      Defendants failed to timely and reasonably respond to Kelly's obvious medical emergency.

10.      Defendants failed to timely enter Kelly's cell, failed to timely remove her from danger, failed to timely provide effective CPR, failed to timely ventilate or bag Kelly, failed to timely use or have/provide access to emergency equipment, failed to timely provide emergency medication and/or services, failed to timely summon EMS, failed to timely provide EMS access to Kelly, and failed to implement policies and training necessary to prevent the obvious risk of death.

11.      Emergency medical records identify Kelly's clinical condition as suffocation/asphyxia and cardiac arrest, with hanging as the chief complaint, and further identify the duration as approximately forty minutes.

12.      Emergency medical records and witness statements further reflect that the responding EMS crew was informed Kelly had been down for an extended period, that detainees had been trying to get help for approximately thirty-to-forty minutes, that 5-Alpha was not adequately supervised, and that EMS did not reach Kelly until after correctional and medical personnel were already aware of the emergency.

13.      Kelly was transported to the hospital and remained alive on life support until August 28, 2024.

14.      Kelly died on August 28, 2024, as a direct and proximate result of the injuries she suffered while in Defendants' custody and as a direct and proximate result of Defendants' acts, omissions, customs, practices, policies, failures, negligence, and deliberate indifference to Kelly's medical condition and emergency medical needs.

3

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

15.     Investigation and other documentation confirm and support Plaintiffs' allegations that Kelly's death was not the result of a single isolated accident but was caused or contributed to by the unconstitutional conduct and negligence of individual officers, supervisors, medical personnel, the City, and municipal and correctional-health customs, policies, failures, and practices.

16.     Plaintiffs assert additional claims, including claims under 42 U.S.C. § 1983 for violations of Kelly's rights under the Fourteenth Amendment to the United States Constitution.

**PARTIES**

17.     Plaintiff Katrina Kelly, by and through the Personal Representative of the Estate of Katrina Kelly (t/b/n), exists for purposes of prosecuting claims arising from the personal injuries, conscious pain and suffering, deprivation of constitutional rights, and death of Kelly.

18.     Plaintiff Delores Nash ("Nash") is a Missouri resident and is the surviving mother of Katrina Kelly and is within the class of persons entitled to recover under RSMo § 537.080.

19.     Plaintiff Bryan Miller ("Miller") is a Missouri resident and is the surviving spouse of Katrina Kelly and is within the class of persons entitled to recover under RSMo § 537.080.

20.     Defendant City of St. Louis ("City") is a constitutional charter city and political subdivision organized under Missouri law.

21.     At all relevant times, City owned, operated, managed, staffed, supervised, and controlled the Justice Center through the Department of Public Safety, Division of Corrections, Commissioner of Corrections, correctional officers, supervisors, employees, agents, contractors, and policymakers.

22.     At all relevant times, City acted under color of state law.

23.     Defendant Jennifer Clemons-Abdullah ("Abdullah") was, at all relevant times, the Commissioner of the St. Louis Division of Corrections, and on information and belief is a Missouri resident.

4

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

24.     Abdullah is sued in her official capacity for purposes of Plaintiffs' claims against the City and in her individual capacity for her own acts, omissions, deliberate indifference, supervisory conduct, failure to train, failure to supervise, failure to correct known deficiencies, and failure to implement constitutionally adequate policies and procedures.

25.     Defendant Charmaine Lockett ("Lockett") was, at all relevant times, a correctional officer assigned to or responsible for 5-Alpha, 1-Side, including the area where Kelly was housed, and is sued in her individual capacity, and on information and belief is a Missouri resident.

26.     Defendant Ronnesha Wilkes ("Wilkes") was, at all relevant times, a correctional officer who responded to the 5-Alpha incident involving Kelly, and is sued in her individual capacity, and on information and belief is a Missouri resident.

27.     Defendant Jerome Dunning ("Dunning") was, at all relevant times, a captain, shift supervisor, and/or correctional supervisor who responded to the 5-Alpha incident involving Kelly and is sued in his individual capacity, and on information and belief is a Missouri resident.

28.     Defendant Melanie Webb ("Webb") was, at all relevant times, a lieutenant, area supervisor, and/or correctional supervisor who received and responded to communications concerning Kelly's hanging and need for emergency help and is sued in her individual capacity, and on information and belief is a Missouri resident.

29.     Defendant Laverne Pearson ("Pearson") was, at all relevant times, a lieutenant, master control officer, and/or correctional supervisor who received and responded to communications concerning Kelly's hanging and need for emergency help and is sued in her individual capacity, and on information and belief is a Missouri resident.

30.     Defendant Javan Fowlkes ("Fowlkes") was, at all relevant times, a captain, shift commander, and/or correctional supervisor responsible for the 2nd shift and/or correctional staff working at the Justice Center on August 24, 2024, and is sued in his individual capacity to the

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

extent of his personal/supervisory involvement, and/or deliberate indifference, and on information and belief is a Missouri resident.

31.     Lockett, Wilkes, Dunning, Webb, Pearson, and Fowlkes (collectively the "Officers") are correctional officers, supervisors, control room personnel, housing unit officers, transportation officers, security personnel, and/or other City personnel involved in the custody, supervision, observation, emergency response, transport, investigation, or care of Kelly, and are sued in their individual capacities.

32.     Defendant Physician Correctional USA (MO.), LLC ("PC USA") is a private correctional health care provider that contracted with the City to supply, manage, administer, supervise, and provide medical and mental health care services to detainees at the Justice Center, and on information and belief is a Missouri resident.

33.     PC USA was responsible for providing, managing, staffing, supervising, training, and administering medical care, mental-health care, emergency medical response, suicide prevention, crisis intervention, health screening, nursing care, physician/mid-level care, and related correctional health-care services for detainees at the Justice Center.

34.     PC USA personnel, employees, agents, servants, and/or representatives involved in Kelly's care, emergency response, intake, assessment, or treatment include, on information and belief, Khadijah Ghani, RN, Tiffany Fisher, RN, Karen Carpenter, RN, Marietta Freeman, RN, Sarah Schafer, RN, RaToya White, LPN, Kelly Douglas, RN, Kie'ira Byrd, LPN, and other unknown PC USA medical or mental-health personnel (collectively the "PC USA Staff").

35.     Defendant Marietta Freeman, RN ("Freeman"), at all relevant times, participated in Kelly's care, emergency response, assessment, resuscitation, and/or treatment, and is sued in her individual capacity, and on information and belief is a Missouri resident.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

36.     Defendant, Khadijah Ghani, RN ("Ghani"), at all relevant times, participated in Kelly's care, emergency response, assessment, resuscitation, and/or treatment, and is sued in her individual capacity, and on information and belief is a Missouri resident.

37.     Defendant Tiffany Fisher, RN ("Fisher"), at all relevant times, participated in Kelly's care, emergency response, assessment, resuscitation, and/or treatment, and is sued in her individual capacity, and on information and belief is a Missouri resident.

38.     Defendant Karen Carpenter, RN ("Carpenter"), at all relevant times, participated in Kelly's care, emergency response, assessment, resuscitation, and/or treatment, and is sued in her individual capacity, and on information and belief is a Missouri resident.

39.     Defendant Doe/unknown PC USA Staff, at all relevant times, participated in Kelly's care, emergency response, assessment, resuscitation, and/or treatment, and on information and belief are Missouri residents.

40.     PC USA Staff are nurses, medical personnel, mental-health personnel, health-care supervisors, medical administrators, crisis-response personnel, and/or other employees, agents, contractors, or representatives of  PC USA who provided or were responsible for medical care, mental-health care, emergency medical response, suicide-prevention services, screening, treatment, supervision, staffing, or training concerning Kelly. At all relevant times, the PC USA Staff involved in Kelly's care and emergency response were acting within the course and scope of their employment, agency, contract, authority, and/or apparent authority with PC USA, such that PC USA is legally responsible for their acts and omissions under principles of agency, apparent agency, respondeat superior, and vicarious liability.

41.     At all relevant times, PC USA acted under color of state law because it performed the City's constitutional obligation to provide medical and mental-health care to detainees confined at the Justice Center.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

42.     At all relevant times, Defendants were responsible for Kelly's custody, safety, supervision, housing, medical care, mental-health care, emergency medical care, emergency response, and protection from known or obvious risks of serious harm.

43.     At all relevant times, Defendants acted under color of law, within the course and scope of their employment, agency, contract, authority, or apparent authority, and/or pursuant to policies, customs, practices, procedures, training, supervision, and direction of City and/or PC USA.

## JURISDICTION AND VENUE

44.     This Court has jurisdiction under RSMo § 478.070 because this action is a civil matter belonging to the general class of cases over which the Circuit Court has authority.

45.     This Court has concurrent jurisdiction over Plaintiffs' federal claims brought under 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of the Fourteenth Amendment to the United States Constitution.

46.     This Court has jurisdiction over Plaintiffs' Missouri claims of wrongful death, negligence, medical negligence, negligent hiring, negligent training, negligent supervision, and related state law claims.

47.     Venue is proper in this Court because the acts, omissions, injuries, constitutional deprivations, death and injuries alleged herein first occurred in the City of St. Louis, Missouri.

## FACTS COMMON TO ALL COUNTS

48.     Kelly was a pretrial detainee at the Justice Center.

49.     Kelly was wholly dependent on Defendants for safety, supervision, housing, medical care, mental-health care, emergency care, emergency equipment, EMS notification, and EMS access.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

50. Kelly could not leave her cell, call outside emergency medical help herself, access emergency equipment herself, or secure life-saving medical intervention except through Defendants.

51. On or about August 13 or 14, 2024, Kelly was arrested and detained at the Justice Center.

52. On August 16, 2024, Kelly underwent classification intake at the Justice Center.

53. During the classification intake process, Kelly was cooperative and received a five-minute phone call.

54. After the call, Kelly was returned to custody and housed in the Justice Center.

55. On information and belief, Kelly had ongoing difficulty accessing the jail phone system and communicating with family, counsel, and/or others outside the Justice Center.

56. On information and belief, by August 24, 2024, Justice Center staff knew or should have known that Kelly was upset and distressed about her inability to use the phone and contact family and/or others.

57. On August 24, 2024, Kelly was housed in 5-Alpha, 1-Side, Cell 8.

58. Lockett was assigned to 5-Alpha, 1-Side, including the area where Kelly was housed.

59. Earlier in the evening of August 24, 2024, Lockett interacted with Kelly regarding Kelly's complaints and distress about the jail phones not working and Kelly's inability to contact family, her mother, or others.

60. Kelly became upset during her interaction with Lockett, and Lockett directed Kelly to lock down in her cell; although Kelly initially refused to lock down, after multiple directives Kelly was secured in her cell.

61. At approximately 7:41 p.m. Lockett left the area for a break.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

62. After Lockett left for break, 5-Alpha, 1-Side was left without adequate officer supervision.

63. No correctional officer was physically present and adequately supervising 5-Alpha, 1-Side during the critical period when Kelly was in obvious distress and when other detainees attempted to obtain help.

64. For an extended period of time, other detainees observed or became aware that Kelly was attempting to hang herself, had hung herself, or was otherwise in obvious life-threatening distress.

65. Other detainees kicked doors, yelled, activated intercom buttons, and attempted to get correctional staff to respond.

66. Other detainees repeatedly communicated that Kelly needed help and that an inmate was hanging or attempting suicide, however, no Justice Center staff timely responded to the pleas for help.

67. The lack of a timely response allowed Kelly to remain hanging, asphyxiating, unconscious, unresponsive, pulseless, apneic, or otherwise in obvious medical distress for a prolonged period.

68. At approximately 8:12 p.m. or 8:13 p.m., Justice Center staff received one or more telephone calls reporting that an inmate on 5-Alpha was hanging, attempting suicide, or needed immediate help.

69. Webb received a call from an unidentified female reporting that a woman on 5-Alpha was hanging and needed help.

70. Pearson received a call from another unidentified female reporting that an inmate on the 5th floor was hanging.

71. Justice Center staff attempted to contact 5-Alpha by telephone.

72. 5-Alpha did not answer.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

73.     The failure of 5-Alpha to answer further confirmed that the unit was not being adequately supervised and that there was no prompt officer presence at or near Kelly's housing area.

74.     The Officers and/or other Justice Center staff were advised of the emergency.

75.     At approximately 8:16 p.m. to 8:18 p.m., Dunning and Wilkes proceeded to 5-Alpha.

76.     Upon entering 5-Alpha, Dunning and Wilkes observed circumstances showing an obvious life-threatening emergency.

77.     After responding to the calls and notifications of other inmates regarding their respective observations of Kelly's emergency condition, it was reported by responding Justice Center staff that the window or view into Kelly's cell was obstructed by a mattress and/or other items.

78.     When Kelly was initially contacted it was reported that Kelly was on the cell floor with a ligature, noose, laundry bag, sheet, towel, or similar item around her neck.

79.     Kelly had no signs of meaningful movement, consciousness, respiration, or life.

80.     Kelly had blood coming from her nose and/or mouth.

81.     Dunning, Wilkes, and/or other Justice Center staff removed or attempted to remove the ligature from Kelly's neck.

82.     The Officers failed to timely begin, maintain, or provide effective treatment or lifesaving intervention before PC USA Staff and/or other medical staff arrived.

83.     PC USA Staff responded to Kelly's cell.

84.     PC USA medical personnel responding to the incident included, on information and belief, the PC USA Staff and/or other PC USA employees, agents, nurses, medical staff, or supervisors.

85.     PC USA Staff found Kelly unresponsive and without adequate signs of life.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

86.    PC USA Staff knew Kelly had suffered a hanging/asphyxia emergency.

87.    PC USA Staff knew Kelly had no pulse, no respiration, or inadequate signs of life.

88.    PC USA Staff knew Kelly required immediate, continuous, and effective CPR, airway management, ventilation, oxygenation, emergency medication, AED/defibrillator use, St. Louis Fire Department EMS ("EMS") notification, and rapid transport.

89.    PC USA Staff began or participated in CPR.

90.    During the emergency response, PC USA Staff attempted to use an AED on Kelly and reported that AED electrodes were placed on Kelly, that the AED went through multiple cycles, that personnel were instructed to "clear" Kelly several times, and that the AED never administered or delivered a shock.

91.    PC USA Staff failed to timely provide all required emergency medical intervention, including timely and effective airway management, ventilation, bagging, oxygenation, emergency medication, emergency equipment, and coordinated emergency response. Further, PC USA Staff reported that they provided breaths with a bag valve mask, but it was not until EMS arrived approximately 10 to 15 minutes later that EMS personnel noticed the face mask was cracked and needed replacement.

92.    PC USA Staff and/or the Officers failed to timely ensure that EMS was called and given immediate access to Kelly.

93.    PC USA Staff and/or the Officers failed to timely and properly activate, coordinate, and execute the emergency medical response required for a hanging/asphyxia/cardiac arrest event.

94.    EMS arrived after correctional and medical personnel had already been aware of Kelly's emergency.

95.    EMS did not reach Kelly until approximately 8:27 p.m. to 8:30 p.m. or later.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

96.     EMS access to Kelly was delayed by secured jail doors, elevators, sally ports, officer availability, command communication, security procedures, and/or lack of an adequate emergency access protocol.

97.     EMS was required to wait, be escorted, or otherwise navigate jail security barriers before reaching Kelly.

98.     PC USA Staff and/or the Officers reported to EMS that Kelly had been down for approximately forty (40) minutes.

99.     Further, inmates reported that they had been kicking doors, pressing intercom buttons, and yelling for help for approximately thirty to forty minutes because no officer was present on the unit.

100.     The need for emergency medical care was obvious to a layperson once Kelly was seen hanging, collapsed, unconscious, unresponsive, pulseless, apneic, bleeding, or otherwise in serious distress.

101.     Kelly's condition constituted an objectively serious medical need.

102.     Kelly's condition constituted a life-threatening medical emergency requiring immediate intervention and adequate equipment to assist in facilitating emergency rescue efforts.

103.     The failure to promptly respond to an obvious hanging/asphyxia/cardiac arrest emergency creates an extreme risk of death and permanent brain injury.

104.     Every minute of delay in discovering, releasing, ventilating, oxygenating, resuscitating, and transporting Kelly materially increased the risk of death and permanent brain injury.

105.     EMS confirmed that Kelly's situation was a hanging/asphyxia/cardiac arrest emergency.

106.     EMS identified Kelly's primary clinical impression as suffocation/asphyxia.

107.     EMS identified Kelly's secondary clinical impression as cardiac arrest.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

108. EMS identified Kelly's chief complaint as hanging.

109. EMS identified the duration of Kelly's condition as approximately forty (40) minutes.

110. EMS identified Kelly's initial patient acuity as critical/red.

111. EMS documented that Kelly was unresponsive, apneic, pulseless, and/or in cardiac arrest when they became involved.

112. EMS documented that they provided advanced life support care, including CPR, mechanical CPR, airway management, ventilation, intravenous access, and epinephrine.

113. EMS documented that Kelly required emergent transport to Barnes Jewish Hospital.

114. EMS noted that they were not immediately with Kelly when the emergency began, but instead had to be summoned, had to enter and navigate the secured jail facility, and had to reach Kelly through the jail's controlled access environment.

115. The time between Kelly's collapse/hanging and meaningful EMS access was prolonged and unreasonable.

116. The delay in discovering Kelly, releasing Kelly, ventilating Kelly, oxygenating Kelly, resuscitating Kelly, summoning EMS, and providing EMS immediate access materially caused or contributed to Kelly's brain injury, loss of oxygen, cardiac arrest, hospitalization, life support, and death.

117. Had Defendants timely responded to inmate warnings, timely discovered Kelly, timely released Kelly from the ligature, timely ventilated and oxygenated Kelly, timely initiated effective CPR, timely provided emergency medication and functioning equipment, timely summoned EMS, and timely provided EMS access, Kelly would have survived or would have had a substantially greater chance of survival.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

118.    The EMS records confirm that this was not a minor medical complaint or ordinary custodial incident, that it was an immediately life-threatening emergency requiring an immediate coordinated correctional, medical, and EMS response.

119.    Defendants knew, or the need was so obvious that knowledge may be inferred, that a detainee who was hanging, unresponsive, apneic, pulseless, or in cardiac arrest required immediate lifesaving medical care.

120.    Kelly was transported to Barnes Jewish Hospital.

121.    Kelly remained critically injured, intubated, unconscious, and/or on life support for several days.

122.    Kelly died on August 28, 2024.

123.    Kelly's injuries and death were caused or contributed to by Defendants' delayed response, inadequate supervision, inadequate staffing, failure to respond to inmate warnings, delayed medical care, delayed EMS notification, delayed EMS access, inadequate emergency medical response, failure to ventilate, failure to provide timely emergency medication, failure to provide or otherwise maintain functional emergency medical equipment, and failure to implement adequate policies, training, staffing, equipment, and procedures.

124.    The incident was not an unforeseeable isolated event.

125.    The City and its policymakers knew or should have known that detainees in cells face known risks of suicide, self-harm, hanging, medical emergencies, respiratory arrest, cardiac arrest, and death.

126.    PC USA knew or should have known that detainees in the Justice Center face known risks of suicide, self-harm, hanging, mental-health crisis, medical emergencies, respiratory arrest, cardiac arrest, and death.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

127.    The City and PC USA were required to have adequate policies, practices, staffing, equipment, training, supervision, and emergency-response systems for suicide attempts, hanging, asphyxia, cardiac arrest, respiratory arrest, detainee medical emergencies, and EMS access.

128.    The City and PC USA were required to ensure that jail staff and medical staff were trained and prepared to respond immediately to detainee emergencies.

129.    The City and PC USA were required to ensure that medical staff and correctional staff were coordinated and prepared to respond to emergencies occurring in secured units.

130.    The City and PC USA were required to ensure that emergency equipment, including a crash cart, AED, manual resuscitator, oxygen, airway equipment, and emergency medication, was timely available, in working or operational condition, and properly used.

131.    The City and PC USA were required to ensure that detainees had a functioning means of communicating emergencies, including intercoms, calls for help, and officer checks.

132.    The City and PC USA were required to ensure that inmates and/or units were not left unsupervised and that Justice Center staff responded to inmate warnings and emergency communications.

133.    The City and PC USA failed to implement and enforce the above-mentioned requirements and such other requirements as may be learned through discovery.

134.    The City and PC USA's failures caused Kelly to suffer loss of oxygen, brain injury, cardiac arrest, respiratory arrest, physical pain, mental anguish, terror, loss of consciousness, hospitalization, life support, constitutional injury, and death.

135.    Defendant City of St. Louis has waived sovereign immunity, in whole or in part, to the extent it maintained liability insurance, self-insurance, risk-management coverage, excess coverage, pooled coverage, or other coverage applicable to Plaintiffs' claims, including claims for personal injury, death, correctional operations, jail operations, law enforcement operations, negligent supervision, emergency response, and/or acts and omissions of City employees at the

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

Justice Center. Plaintiffs plead waiver to the maximum amount and for the purposes covered by such insurance, self-insurance, risk-management coverage, excess coverage, pooled coverage, or other applicable coverage, including under RSMo §§ 71.185 and 537.610. To the extent the City contends no such waiver exists, Plaintiffs plead that the facts concerning the City's insurance, self-insurance, coverage, exclusions, reservations, and limits are within the City's possession and should be determined after discovery.

136.    To the extent any individual City Defendant or public employee Defendant asserts official immunity, Plaintiffs plead that official immunity does not apply because the acts and omissions alleged herein involved ministerial, mandatory, and/or non-discretionary duties required to be performed in a prescribed manner without the exercise of policy judgment, including required unit supervision, safety protocols, supervision protocols, cell checks, response to detainee emergency communications, Code 3 response, emergency medical notification, EMS notification, EMS access, medical equipment access and maintenance, and compliance with known Justice Center policies, procedures, post orders, training, and emergency response requirements. Plaintiffs further plead, in the alternative, that the individual City Defendants and/or public employee Defendants acted in bad faith, with malice, with conscious wrongdoing, conscious disregard of known duties, and/or under circumstances from which bad faith may be inferred, including by knowingly disregarding required unit supervision, safety protocols, supervision protocols, emergency response duties, EMS access duties, and/or an obvious life-threatening emergency involving a detainee who was hanging, unresponsive, pulseless, apneic, and wholly dependent upon Defendants for rescue and medical care.

137.    Plaintiffs further plead, in the alternative, that Kelly's injuries and death were caused or contributed to by dangerous conditions of public property at the Justice Center, including the physical configuration and condition of Kelly's cell, bunk, ladder, ligature access conditions, communication/intercom failures, emergency access conditions, and emergency

17

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

equipment conditions, which created a reasonably foreseeable risk of hanging, asphyxia, delayed discovery, delayed rescue, injury, and death. Plaintiffs plead that such dangerous conditions were created by City employees and/or existed for a sufficient time that City had actual or constructive notice of the dangerous conditions in time to take measures to protect against them.

## COUNT I – NEGLIGENCE
### (against Defendant City of St. Louis)

COMES NOW Plaintiffs, by and through counsel, and for Count I of their First Amended Petition against Defendant City of St. Louis state to the Court as follows:

138.    Plaintiffs reallege and incorporate by reference the averments of paragraphs 1 through 137 as if fully set forth herein.

139.    City owed Kelly duties to exercise ordinary care in the ownership, operation, management, staffing, supervision, training, equipping, control, and administration of the Justice Center, including duties to protect Kelly from known or foreseeable harm.

140.    The City owed Kelly duties to provide reasonable custody, safety, supervision, cell checks, unit observation, emergency response, medical access, functioning emergency medical equipment, EMS notification, EMS access, suicide prevention practices, protection from unsafe conditions, adequate medical care, and protection while Kelly was detained in the Justice Center.

141.    The City knew or should have known that detainees in locked cells are wholly dependent upon correctional staff, medical staff, emergency equipment, and jail emergency response systems for access to life saving intervention.

142.    The City knew or should have known that inadequate staffing, inadequate unit supervision, inadequate cell checks, inadequate response to inmate warnings, inadequate emergency equipment, inadequate EMS access, and inadequate coordination between correctional and medical personnel created a foreseeable risk of injury and death.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

143.    The City was negligent in one or more of the following respects:

a.    failing to reasonably supervise Kelly;

b.    failing to adequately staff and supervise 5-Alpha, 1-Side;

c.    failing to ensure that 5-Alpha, 1-Side was not left without adequate officer presence and supervision;

d.    failing to perform or require adequate cell checks and sign of life checks;

e.    failing to timely respond to detainee warnings, calls, intercoms, yelling, and requests for help;

f.    failing to timely discover Kelly hanging, unconscious, unresponsive, pulseless, apneic, or otherwise in obvious medical distress;

g.    failing to timely enter Kelly's cell;

h.    failing to timely remove the ligature from Kelly's neck;

i.    failing to timely begin and/or maintain effective medical intervention;

j.    failing to timely summon, coordinate, and/or provide access to medical staff and EMS;

k.    failing to provide EMS immediate access through the Justice Center facility;

l.    failing to provide or require functioning emergency medical equipment;

m.    failing to provide or require adequate emergency response policies and procedures;

n.    failing to train, supervise, discipline, and control correctional staff;

o.    failing to coordinate correctional and medical personnel response to detainee emergencies, treatment and/or care;

p.    failing to correct known deficiencies concerning staffing, supervision, cell checks, suicide prevention, medical response, and/or EMS access;

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

q.      by the acts and/or omissions alleged herein, individually and/or cumulatively; and

r.      otherwise failing to exercise ordinary care as discovery may show.

144.    Kelly's injury and death occurred as a direct and proximate result of City's negligence and/or failure to exercise ordinary care as described herein.

145.    City's negligence was a direct and proximate cause and/or contributed to cause injuries and damage to Kelly's body as a whole, including loss of oxygen, brain injury, cardiac arrest, respiratory arrest, hospitalization, life support, conscious pain and suffering, and death.

146.    As a direct and proximate result of City's negligence Kelly experienced personal injuries, including, but not limited to, pain, suffering, disability, and death. Furthermore, Plaintiffs suffered damages including, but not limited to, pecuniary loss, funeral expenses, reasonable values of services, consortium, companionship, comfort, and such other damages as allowed by RSMo §537.090, all in an amount to be determined at trial as is fair and reasonable in excess of Twenty Five Thousand Dollars ($25,000.00).

WHEREFORE, Plaintiffs pray for judgment against Defendant City of St. Louis on Count I in an amount that is fair and reasonable in excess of Twenty Five Thousand Dollars ($25,000.00), together with costs, interest, and such other and further relief as the Court deems just and proper.

## COUNT II – NEGLIGENCE
**(against Defendant Jennifer Clemons-Abdullahin in her individual capacity)**

COMES NOW Plaintiffs, by and through counsel, and for Count II of their First Amended Petition against Defendant Jennifer Clemons-Abdullah in her individual capacity state to the Court as follows:

147.    Plaintiffs reallege and incorporate by reference the averments of paragraphs 1 through 146 as if fully set forth herein.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

148. Abdullah was the Commissioner of the St. Louis Division of Corrections and had authority and responsibility concerning the operation, staffing, supervision, training, discipline, policies, procedures, emergency response systems, detainee observation systems, and safety practices at the Justice Center. Abdullah is sued in Count II in her individual capacity for her own acts and omissions, including her failure to exercise ordinary care as Commissioner after notice of known or obvious deficiencies concerning staffing, supervision, cell checks, emergency-response practices, EMS access procedures, medical contractor coordination, and detainee safety at the Justice Center. Plaintiffs do not seek to impose liability against Abdullah in Count II based solely on respondeat superior.

149. Abdullah owed Kelly duties to exercise ordinary care in the supervision, management, operation, training, staffing, equipping, and control of the Justice Center.

150. Abdullah knew or should have known that detainees at the Justice Center required adequate staffing, observation, cell checks, suicide prevention practices, emergency medical response, functioning emergency medical equipment, medical contractor coordination, and EMS access.

151. Abdullah knew or should have known that failures concerning staffing, supervision, cell checks, emergency response, emergency equipment, EMS access, medical response coordination, and detainee observation created a foreseeable risk of injury and death.

152. Abdullah was negligent in one or more of the following respects:

    a.    failing to ensure adequate staffing and supervision of the units;

    b.    failing to ensure adequate policies and procedures for officer breaks and unit coverage;

    c.    failing to ensure adequate cell checks and sign of life checks;

    d.    failing to ensure that correctional staff responded to inmate warnings and emergency communications;

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

e.    failing to ensure adequate emergency response policies and procedures;

f.    failing to ensure adequate coordination between correctional staff, PC USA, and EMS;

g.    failing to ensure that EMS could promptly access secured units during life-threatening emergencies;

h.    failing to train, supervise, discipline, and control correctional staff;

i.    failing to correct known or obvious deficiencies in jail operations and emergency response;

j.    failing to provide or require functioning emergency medical equipment;

k.    by the acts and/or omissions alleged herein, individually and/or cumulatively; and

l.    otherwise failing to exercise ordinary care as discovery may show.

153.    Kelly's injury and death occurred as a direct and proximate result of Abdullah's negligence and/or failure to exercise ordinary care as described herein.

154.    Abdullah's negligence was a direct and proximate cause and/or contributed to cause injuries and damage to Kelly's body as a whole, including loss of oxygen, brain injury, cardiac arrest, respiratory arrest, hospitalization, life support, conscious pain and suffering, and death.

155.    As a direct and proximate result of Abdullah's negligence Kelly experienced personal injuries, including, but not limited to, pain, suffering, disability, and death. Furthermore, Plaintiffs suffered damages including, but not limited to, pecuniary loss, funeral expenses, reasonable values of services, consortium, companionship, comfort, and such other damages as allowed by RSMo §537.090, all in an amount to be determined at trial as is fair and reasonable in excess of Twenty Five Thousand Dollars ($25,000.00).

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

WHEREFORE, Plaintiffs pray for judgment against Defendant Jennifer Clemons-Abdullah on Count II in an amount that is fair and reasonable in excess of Twenty Five Thousand Dollars ($25,000.00), together with costs, interest, and such other and further relief as the Court deems just and proper.

### COUNT III – NEGLIGENCE
**(against Defendants Lockett, Wilkes, Dunning, Webb, Pearson, Fowlkes)**

COMES NOW Plaintiffs, by and through counsel, and for Count III of their First Amended Petition against Defendants Lockett, Wilkes, Dunning, Webb, Pearson, and Fowlkes collectively the Officers state to the Court as follows:

156.    Plaintiffs reallege and incorporate by reference the averments of paragraphs 1 through 155 as if fully set forth herein.

157.    The Officers owed Kelly duties to exercise ordinary care in supervising, observing, protecting, responding to, rescuing, and obtaining medical care for Kelly.

158.    The Officers knew or should have known that Kelly was wholly dependent upon Justice Center staff for supervision, emergency response, medical access, EMS notification, EMS access, and life-saving intervention.

159.    Lockett knew or should have known that Kelly was upset, distressed, isolated in her cell, and had just been involved in a dispute concerning her inability to communicate with family or others outside the Justice Center.

160.    Lockett knew or should have known that leaving 5-Alpha, 1-Side without adequate officer presence or supervision created a foreseeable risk that Kelly or other detainees would not receive timely emergency response.

161.    Webb and Pearson knew or should have known, upon receiving calls reporting that an inmate on 5-Alpha was hanging or needed immediate help, that Kelly was facing an obvious life-threatening emergency requiring immediate correctional, medical, and EMS response.

23

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

162.     Dunning and Wilkes knew or should have known, upon entering 5-Alpha and observing or being told that Kelly was hanging, that Kelly required immediate rescue, CPR, airway management, ventilation, emergency medical care, EMS notification, and prompt EMS access.

163.     Fowlkes knew or should have known, as captain, shift commander, and/or correctional supervisor, that adequate staffing, supervision, emergency response, and EMS access were necessary to protect detainees from serious injury and death.

164.     The Officers were negligent in one or more of the following respects:

    a.     failing to adequately supervise Kelly and 5-Alpha, 1-Side;

    b.     failing to ensure adequate officer presence and unit coverage;

    c.     failing to perform or require adequate cell checks and sign of life checks;

    d.     failing to timely respond to detainee warnings, calls, intercoms, yelling, and requests for help;

    e.     failing to timely discover Kelly hanging, unconscious, unresponsive, pulseless, apneic, or otherwise in obvious medical distress;

    f.     failing to timely enter Kelly's cell;

    g.     failing to timely remove Kelly from danger;

    h.     failing to timely remove the ligature from Kelly's neck;

    i.     failing to timely begin, maintain, or assist with lifesaving intervention;

    j.     failing to timely summon or coordinate medical staff and EMS;

    k.     failing to timely provide EMS access through the secured jail facility;

    l.     failing to communicate necessary information to medical staff and EMS;

    m.     failing to follow applicable emergency, Code 3, suicide response, cell check, and medical response policies;

    n.     failing to provide or require functioning emergency medical equipment;

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

o.      by the acts and/or omissions alleged herein, individually and/or cumulatively; and

p.      otherwise failing to exercise ordinary care as discovery may show.

165.    Kelly's injury and death occurred as a direct and proximate result of Officers' negligence and/or failure to exercise ordinary care as described herein.

166.    Officers' negligence was a direct and proximate cause and/or contributed to cause injuries and damage to Kelly's body as a whole, including loss of oxygen, brain injury, cardiac arrest, respiratory arrest, hospitalization, life support, conscious pain and suffering, and death.

167.    As a direct and proximate result of Officers' acts and conduct Kelly experienced personal injuries, including, but not limited to, pain, suffering, disability, and death. Furthermore, Plaintiffs suffered damages including, but not limited to, pecuniary loss, funeral expenses, reasonable values of services, consortium, companionship, comfort, and such other damages as allowed by RSMo §537.090, all in an amount to be determined at trial as is fair and reasonable in excess of Twenty Five Thousand Dollars ($25,000.00).

WHEREFORE, Plaintiffs pray for judgment against Officers Defendants Lockett, Wilkes, Dunning, Webb, Pearson, and Fowlkes, individually, jointly and/or severally, on Count III in an amount that is fair and reasonable in excess of Twenty Five Thousand Dollars ($25,000.00), together with costs, interest, and such other and further relief as the Court deems just and proper.

### COUNT IV – NEGLIGENCE/MEDICAL NEGLIGENCE
**(against Defendant Physician Correctional USA (MO.), LLC, Defendants Marietta Freeman, Khadijah Ghani, Tiffany Fisher, Karen Carpenter,  and other PC USA Staff)**

COMES NOW Plaintiffs, by and through counsel, and for Count IV of their First Amended Petition against Defendant Physician Correctional USA (MO.), LLC, Defendants Marietta Freeman, Khadijah Ghani, Tiffany Fisher, Karen Carpenter,  and other PC USA Staff state to the Court as follows:

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

168. Plaintiffs reallege and incorporate by reference the averments of paragraphs 1 through 167 as if fully set forth herein.

169. PC USA, Freeman, Ghani, Fisher, Carpenter, and other PC USA Staff owed Kelly duties to use that degree of care, skill, and knowledge ordinarily used under the same or similar circumstances by reasonably careful correctional health providers, nurses, medical staff, and emergency response personnel.

170. PC USA, Freeman, Ghani, Fisher, Carpenter, and other PC USA Staff owed Kelly duties to provide timely and adequate medical care, emergency medical assessment, CPR, airway management, ventilation, oxygenation, emergency equipment, emergency medication, EMS coordination, and emergency response care.

171. PC USA, Freeman, Ghani, Fisher, Carpenter, and other PC USA Staff knew or should have known that hanging, asphyxia, respiratory arrest, cardiac arrest, pulselessness, apnea, and unconsciousness required immediate, continuous, and effective emergency medical intervention.

172. PC USA, Freeman, Ghani, Fisher, Carpenter, and other PC USA Staff were negligent in one or more of the following respects:

    a.    failing to timely and adequately assess Kelly;

    b.    failing to timely and adequately provide emergency medical care;

    c.    failing to timely and effectively perform, assist with, or coordinate CPR;

    d.    failing to timely and effectively ventilate, bag, oxygenate, and manage Kelly's airway;

    e.    failing to timely identify, correct, or replace defective, cracked, unavailable, or ineffective emergency equipment;

    f.    failing to timely and properly use or coordinate use of the AED;

    g.    failing to timely summon, coordinate, or communicate with EMS;

26

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

h.  failing to timely provide or obtain effective airway equipment, a functioning bag valve mask, oxygen, and related emergency supplies;

i.  failing to timely provide or coordinate emergency medication;

j.  failing to timely communicate Kelly's condition and emergency needs to correctional staff and EMS;

k.  failing to follow applicable correctional health, Code 3, suicide response, emergency medical response, and resuscitation procedures;

l.  failing to maintain adequate emergency equipment and supplies;

m.  failing to ensure that medical staff were trained and prepared to respond to hanging/asphyxia/cardiac-arrest emergencies;

n.  by the acts and/or omissions alleged herein, individually and/or cumulatively; and

o.  otherwise failing to exercise reasonable care as discovery may show.

173.  Kelly's injury and death occurred as a direct and proximate result of PC USA, Freeman, Ghani, Fisher, Carpenter, and other PC USA Staff negligence and/or failure to exercise ordinary care as described herein.

174.  PC USA, Freeman, Ghani, Fisher, Carpenter, and other PC USA Staff negligence was a direct and proximate cause and/or contributed to cause injuries and damage to Kelly's body as a whole, including loss of oxygen, brain injury, cardiac arrest, respiratory arrest, hospitalization, life support, conscious pain and suffering, and death.

175.  As a direct and proximate result of the acts and omissions of PC USA, Freeman, Ghani, Fisher, Carpenter, and other PC USA Staff Kelly experienced personal injuries, including, but not limited to, pain, suffering, disability, and death. Furthermore, Plaintiffs suffered damages including, but not limited to, pecuniary loss, funeral expenses, reasonable values of services, consortium, companionship, comfort, and such other damages as allowed by RSMo §537.090, all

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

in an amount to be determined at trial as is fair and reasonable in excess of Twenty Five Thousand Dollars ($25,000.00).

WHEREFORE, Plaintiffs pray for judgment against PC USA, Freeman, Ghani, Fisher, Carpenter, and other PC USA Staff, individually, jointly and/or severally, on Count IV in an amount that is fair and reasonable in excess of Twenty Five Thousand Dollars ($25,000.00), together with costs, interest, and such other and further relief as the Court deems just and proper.

### COUNT V -  NEGLIGENT HIRING, TRAINING, STAFFING, SUPERVISION, EQUIPPING AND RETENTION
**(against Defendant Physician Correctional USA (MO.), LLC)**

COMES NOW Plaintiffs, by and through counsel, and for Count V of their First Amended Petition against Defendant Physician Correctional USA (MO.), LLC state to the Court as follows:

176.    Plaintiffs reallege and incorporate by reference the averments of paragraphs 1 through 175 as if fully set forth herein.

177.    PC USA contracted to provide medical care, mental health care, staffing, training, supervision, emergency response services, suicide prevention services, and correctional health services to detainees at the Justice Center.

178.    PC USA owed Kelly duties to exercise ordinary care in hiring, training, staffing, supervising, equipping, retaining, and controlling its employees, agents, nurses, medical providers, mental health personnel, supervisors, and emergency response personnel.

179.    PC USA knew or should have known that detainees at the Justice Center faced foreseeable risks of suicide, self-harm, hanging, asphyxia, medical emergency, respiratory arrest, cardiac arrest, and death.

180.    PC USA knew or should have known that its personnel would be required to respond immediately and effectively to hanging/asphyxia/cardiac-arrest emergencies in secured jail housing units.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

181.   PC USA was negligent in one or more of the following respects:

a.   failing to hire and retain qualified correctional-health personnel;

b.   failing to adequately train medical staff concerning hanging, asphyxia, respiratory arrest, cardiac arrest, CPR, ventilation, oxygenation, AED use, airway management, emergency medication, and EMS coordination;

c.   failing to adequately train medical staff concerning suicide prevention, suicide risk, self-harm, crisis response, and emergency communication;

d.   failing to adequately staff the Justice Center with medical personnel capable of promptly responding to emergencies;

e.   failing to adequately supervise medical staff;

f.   failing to ensure that emergency equipment was present, functioning, maintained, checked, and available for use;

g.   failing to properly equip medical staff for hanging, asphyxia, respiratory arrest, and cardiac arrest emergencies;

h.   failing to ensure that staff knew how to identify and replace defective or ineffective emergency equipment;

i.   failing to ensure adequate coordination between PC USA staff, correctional staff, and EMS;

j.   failing to implement adequate policies and procedures for Code 3 emergencies and detainee cardiac arrest events;

k.   failing to investigate, discipline, correct, and prevent deficient emergency response practices;

l.   by the acts and/or omissions alleged herein, individually and/or cumulatively; and

m.   otherwise failing to exercise ordinary care as discovery may show.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

182.   PC USA's negligence was a direct and proximate cause and/or contributed to cause injuries and damage to Kelly's body as a whole, including loss of oxygen, brain injury, cardiac arrest, respiratory arrest, hospitalization, life support, conscious pain and suffering, and death.

183.   As a direct and proximate result of PC USA's acts and conduct Kelly experienced personal injuries, including, but not limited to, pain, suffering, disability, and death. Furthermore, Plaintiffs suffered damages including, but not limited to, pecuniary loss, funeral expenses, reasonable values of services, consortium, companionship, comfort, and such other damages as allowed by RSMo §537.090, all in an amount to be determined at trial as is fair and reasonable in excess of Twenty Five Thousand Dollars ($25,000.00).

WHEREFORE, Plaintiffs pray for judgment against Physician Correctional USA (MO.), LLC on Count V in an amount that is fair and reasonable in excess of Twenty Five Thousand Dollars ($25,000.00), together with costs, interest, and such other and further relief as the Court deems just and proper.

### COUNT VI – VICARIOUS LIABILITY / RESPONDEAT SUPERIOR
**(against Defendant Physician Correctional USA (MO.), LLC)**

COMES NOW Plaintiffs, by and through counsel, and for Count VI of their First Amended Petition against Defendant Physician Correctional USA (MO.), LLC state to the Court as follows:

184.   Plaintiffs reallege and incorporate by reference the averments of paragraphs 1 through 183 as if fully set forth herein.

185.   At all relevant times, Freeman, Ghani, Fisher, Carpenter, and other PC USA Staff were employees, agents, servants, representatives, contractors, and/or apparent agents of PC USA.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

186.    At all relevant times, Freeman, Ghani, Fisher, Carpenter, and other PC USA Staff were acting within the course and scope of their employment, agency, contract, authority, and/or apparent authority with PC USA.

187.    Freeman, Ghani, Fisher, Carpenter, and other PC USA Staff participated in or were responsible for Kelly's care, medical assessment, emergency response, resuscitation, treatment, equipment use, EMS coordination, or emergency medical response.

188.    The acts and omissions of Freeman, Ghani, Fisher, Carpenter, and other PC USA Staff were committed within the course and scope of their employment, agency, authority, or apparent authority with PC USA.

189.    PC USA is vicariously liable for the acts and omissions of Freeman, Ghani, Fisher, Carpenter, and other PC USA Staff under principles of agency, apparent agency, respondeat superior, and vicarious liability.

190.    The acts and omissions of Freeman, Ghani, Fisher, Carpenter, and other PC USA Staff were a direct and proximate cause and/or contributed to cause injuries and damage to Kelly's body as a whole, including loss of oxygen, brain injury, cardiac arrest, respiratory arrest, hospitalization, life support, conscious pain and suffering, and death.

191.    As a direct and proximate result of the acts and omissions of Freeman, Ghani, Fisher, Carpenter, and other PC USA Staff Kelly experienced personal injuries, including, but not limited to, pain, suffering, disability, and death. Furthermore, Plaintiffs suffered damages including, but not limited to, pecuniary loss, funeral expenses, reasonable values of services, consortium, companionship, comfort, and such other damages as allowed by RSMo §537.090, all in an amount to be determined at trial as is fair and reasonable in excess of Twenty Five Thousand Dollars ($25,000.00).

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

WHEREFORE, Plaintiffs pray for judgment against Physician Correctional USA (MO.), LLC on Count VI in an amount that is fair and reasonable in excess of Twenty Five Thousand Dollars ($25,000.00), together with costs, interest, and such other and further relief as the Court deems just and proper.

## COUNT VII – WRONGFUL DEATH
### (against all Defendants)

COMES NOW Plaintiffs, by and through counsel, and for Count VII of their First Amended Petition against all Defendants state to the Court as follows:

192.    Plaintiffs reallege and incorporate by reference the averments of paragraphs 1 through 191 as if fully set forth herein.

193.    Kelly died on August 28, 2024.

194.    Plaintiffs are members of the class of persons entitled to recover for Kelly's wrongful death under RSMo § 537.080.

195.    Defendants' acts and omissions directly and proximately caused or contributed to cause Kelly's death.

196.    Defendants caused or contributed to cause Kelly's death by their acts and conduct as previously stated herein, including failing to supervise, protect, monitor, discover, rescue, ventilate, oxygenate, resuscitate, treat, summon EMS, provide EMS access, provide functioning emergency equipment, and provide timely and adequate emergency medical care.

197.    Before death, Kelly suffered injuries and damages, including loss of oxygen, brain injury, cardiac arrest, respiratory arrest, physical pain, mental anguish, terror, loss of consciousness, hospitalization, life support, pain, suffering, and disability.

198.    As a direct and proximate result of Defendants' acts and omissions, Plaintiffs suffered damages recoverable under RSMo § 537.090 , including funeral expenses, pecuniary losses, loss of services, consortium, companionship, comfort, guidance, counsel, support, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance,

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

counsel, training, and support Kelly would have provided, and such other damages as allowed by RSMo §537.090, all in an amount to be determined at trial as is fair and reasonable in excess of Twenty Five Thousand Dollars ($25,000.00).

WHEREFORE, Plaintiffs pray for judgment against Defendants on Count VII in an amount that is fair and reasonable in excess of Twenty Five Thousand Dollars ($25,000.00), together with costs, interest, and such other and further relief as the Court deems just and proper.

### COUNT VIII – VIOLATION OF 42 U.S.C. § 1983/FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS AND KNOWN OR OBVIOUS RISKS OF SERIOUS HARM/DELAYED EMERGENCY CARE
**(against Defendants Charmaine Lockett, Ronnesha Wilkes, Jerome Dunning, Melanie Webb, Laverne Pearson, Javan Fowlkes, and  Jennifer Clemons-Abdullah in their individual capacities)**

COMES NOW Plaintiffs, by and through counsel, and for Count VIII of their First Amended Petition against Defendants Charmaine Lockett, Ronnesha Wilkes, Jerome Dunning, Melanie Webb, Laverne Pearson, Javan Fowlkes, and, to the extent applicable based on her personal involvement rather than respondeat superior, Jennifer Clemons-Abdullah, in their individual capacities, (these Defendants are referred to in this Count as the "City Individual Defendants") state to the Court as follows:

199.    Plaintiffs reallege and incorporate by reference the averments of paragraphs 1 through 198 as if fully set forth herein.

200.    This Count VIII is brought under 42 U.S.C. § 1983 for violation of Kelly's rights under the Fourteenth Amendment to the United States Constitution.

201.    At all relevant times, Kelly was a pretrial detainee.

202.    As a pretrial detainee, Kelly had clearly established constitutional rights to reasonable safety, protection from known or obvious risks of serious harm, and adequate medical care, including the right to be free from deliberate indifference to serious medical needs and life threatening medical emergencies.

203.    At all relevant times, City Individual Defendants acted under color of state law.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

204.    Kelly suffered an objectively serious medical need, including hanging, asphyxia, respiratory arrest, cardiac arrest, unconsciousness, pulselessness, apnea, loss of oxygen, brain injury, and imminent risk of death.

205.    Kelly's need for immediate medical care was obvious to a layperson.

206.    The City Individual Defendants knew of Kelly's serious medical need, or the need was so obvious that knowledge may be inferred, based on the acts and omissions previously pleaded herein including because:

a.    Kelly was housed in a locked cell and wholly dependent upon Defendants for rescue and medical care;

b.    detainees yelled, kicked doors, activated intercoms, and attempted to summon help;

c.    calls were received reporting that an inmate on 5-Alpha was hanging, attempting suicide, or needed immediate help;

d.    Justice Center staff attempted to contact 5-Alpha and 5-Alpha did not answer;

e.    Kelly was discovered hanging or after hanging;

f.    Kelly was unresponsive, pulseless, apneic, bleeding, unconscious, or otherwise in obvious medical distress;

g.    staff knew and were informed that Kelly had been in obvious distress for an extended period;

h.    staff knew Kelly required immediate rescue, medical care, EMS notification, and EMS access; and

i.    the emergency was so obvious that actual knowledge may be inferred.

207.    Despite knowledge of Kelly's serious medical need and the known or obvious risk of serious harm, the City Individual Defendants deliberately disregarded that need and risk.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

208.    The City Individual Defendants acted with deliberate indifference in one or more of the following respects:

a.    failing to timely respond to detainee warnings, calls, intercoms, yelling, and requests for help;

b.    failing to supervise Kelly's unit and/or failing to timely check on Kelly;

c.    failing to timely discover Kelly's hanging and medical distress;

d.    failing to timely enter Kelly's cell;

e.    failing to timely remove Kelly from danger;

f.    failing to timely remove the ligature from Kelly's neck;

g.    failing to timely begin, maintain, or assist with lifesaving intervention;

h.    failing to timely summon medical personnel;

i.    failing to timely summon EMS;

j.    failing to timely provide EMS access through secured doors, elevators, sally ports, unit barriers, and other controlled access points;

k.    failing to communicate necessary emergency information to medical staff and EMS;

l.    failing to follow known emergency response, Code 3, suicide response, cell check, and medical response procedures;

m.    failing to provide or ensure access to functioning emergency medical equipment to the extent within each Defendant's authority or responsibility;

n.    failing to provide constitutionally adequate emergency response under the circumstances;

o.    by the acts and/or omissions alleged herein, individually and/or cumulatively; and

p.    otherwise acting with deliberate indifference as discovery may show.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

209.    Each City Individual Defendant is liable only for that Defendant's own acts, omissions, knowledge, deliberate indifference, and personal involvement in the violation of Kelly's constitutional rights.

210.    The conduct of the City Individual Defendant was more than negligence and more than gross negligence.

211.    The conduct of the City Individual Defendants constituted deliberate indifference, reckless disregard, and callous indifference to Kelly's serious medical needs, known or obvious risks of serious harm, and federally protected rights.

212.    The deliberate indifference of the City Individual Defendants delayed Kelly's discovery, rescue, release from the ligature, ventilation, oxygenation, resuscitation, EMS access, and emergency medical treatment.

213.    The deliberate indifference of the City Individual Defendants directly and proximately caused or contributed to cause Kelly's injuries, pain and suffering, loss of oxygen, brain injury, cardiac arrest, respiratory arrest, hospitalization, life support, deprivation of constitutional rights, death, and/or loss of a substantial chance of survival or better medical outcome.

214.    Since the City Individual Defendants acted with reckless or callous indifference to Kelly's federally protected rights, Plaintiffs are entitled to punitive damages against such Defendants in their individual capacities.

215.    Plaintiffs are entitled to damages, attorney's fees, and costs under 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiffs pray for judgment against Defendants Charmaine Lockett, Ronnesha Wilkes, Jerome Dunning, Melanie Webb, Laverne Pearson, Javan Fowlkes, and/or, to the extent applicable, Jennifer Clemons-Abdullah, in their individual capacities, on Count VIII in an amount fair and reasonable and in excess of Twenty Five Thousand Dollars ($25,000.00),

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

together with punitive damages, attorney's fees under 42 U.S.C. § 1988, costs, interest, and such other and further relief as the Court deems just and proper.

### COUNT IX – VIOLATION OF 42 U.S.C. § 1983/FOURTEENTH AMENDMENT FAILURE TO PROTECT FROM KNOWN RISK OF SUICIDE, SELF-HARM, AND SERIOUS HARM
(against the Officers and PC USA Staff in their individual capacities)

COMES NOW Plaintiffs, by and through counsel, and for Count IX of their First Amended Petition against Defendants Charmaine Lockett, Ronnesha Wilkes, Jerome Dunning, Melanie Webb, Laverne Pearson, Javan Fowlkes, Marietta Freeman, Khadijah Ghani, Tiffany Fisher, Karen Carpenter, and Doe/Unknown PC USA Staff, in their individual capacities, (collectively referred to in this Count IX as the "Individual Defendants") state to the Court as follows:

216.    Plaintiffs reallege and incorporate by reference the averments of paragraphs 1 through 215 as if fully set forth herein.

217.    This Count IX is pleaded in the alternative and in addition to Plaintiffs' other claims, counts and causes of action.

218.    To the extent Defendants contend that Kelly's injuries and/or death resulted from suicide or self-harm, the Individual Defendants remain liable because they knew of and deliberately disregarded a substantial risk of suicide, self-harm, serious injury, and death.

219.    At all relevant times, Kelly as a pretrial detainee had clearly established constitutional rights to reasonable safety, protection from known or obvious risks of serious harm, and adequate medical care, including protection from known risks of suicide, self-harm, serious harm, and death while detained in the Justice Center.

220.    At all relevant times, the individual Officers acted under color of state law because they were correctional officers, supervisors, control-room personnel, housing unit officers, or other City personnel acting under authority of the City. At all relevant times, the individual PC USA Staff acted under color of state law because they performed the City's

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

constitutional obligation to provide medical care, mental health care, screening, crisis response, emergency medical care, and related correctional health services to detainees confined at the Justice Center.

221. On information and belief, one or more of the Individual Defendants had actual knowledge of facts showing that Kelly faced a substantial risk of suicide, self-harm, serious injury, or death.

222. The Individual Defendants' knowledge is based on the acts and omissions previously pleaded herein included one or more of the following:

a. Kelly's intake records;

b. Kelly's classification records;

c. Kelly's medical and mental-health screening;

d. Kelly's medical and mental-health history;

e. Kelly's medication, mental-health, or referral information;

f. Kelly's behavior observed by staff;

g. Kelly's statements or complaints;

h. Kelly's distress about phone access and inability to contact family or others;

i. Kelly's dispute with staff before being secured in her cell;

j. warnings, calls, intercoms, yelling, or other communications from detainees;

k. the lack of adequate officer presence on 5-Alpha, 1-Side;

l. the known risk of hanging in a cell;

m. the known risk of ligature use in a cell;

n. prior detainee suicide, self-harm, hanging, or medical emergency risks;

o. prior staffing, observation, supervision, and emergency-response problems;

p. by the acts and/or omissions alleged herein, individually and/or cumulatively; and

q. other information known to Defendants before or during the occurrence.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

223.    After the Individual Defendants knew of facts showing a substantial risk, they failed to take reasonable measures to abate the risk.

224.    Reasonable measures included timely observation, adequate unit supervision, cell checks, increased monitoring, suicide-prevention procedures, mental health intervention, removal of hazards, immediate response to calls for help, immediate entry into the cell, immediate rescue, immediate medical care, immediate ventilation, immediate CPR, immediate EMS notification, and immediate EMS access.

225.    The Individual Defendants failed to take those reasonable measures.

226.    The Individual Defendants' conduct was more than negligence and more than gross negligence.

227.    The Individual Defendants' conduct constituted deliberate indifference, reckless disregard, and callous indifference to Kelly's federally protected rights.

228.    The Individual Defendants' deliberate indifference directly and proximately caused or contributed to cause Kelly's injuries, suffering, loss of oxygen, brain injury, cardiac arrest, respiratory arrest, hospitalization, life support, constitutional deprivation, death, and/or loss of a substantial chance of survival or better medical outcome.

229.    Since the Individual Defendants acted with reckless or callous indifference to Kelly's federally protected rights, Plaintiffs are entitled to punitive damages against the Individual Defendants in their individual capacities.

230.    Plaintiffs are entitled to damages, attorney's fees, and costs under 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiffs pray for judgment against Defendants Charmaine Lockett, Ronnesha Wilkes, Jerome Dunning, Melanie Webb, Laverne Pearson, Javan Fowlkes, Marietta Freeman, Khadijah Ghani, Tiffany Fisher, Karen Carpenter, and Doe/Unknown PC USA Staff, in their individual capacities, on Count IX in an amount fair and reasonable and in excess of

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

Twenty Five Thousand Dollars ($25,000.00), together with punitive damages, attorney's fees under 42 U.S.C. § 1988, costs, interest, and such other and further relief as the Court deems just and proper.

## COUNT X – VIOLATION OF 42 U.S.C. § 1983/FOURTEENTH AMENDMENT SUPERVISORY LIABILITY
### (against Defendant Jennifer Clemons-Abdullah in her individual capacity)

COMES NOW Plaintiffs, by and through counsel, and for Count X of their First Amended Petition against Defendant Jennifer Clemons-Abdullah, in her individual capacity, state to the Court as follows:

231.    Plaintiffs reallege and incorporate by reference the averments of paragraphs 1 through 230 as if fully set forth herein.

232.    This Count X is brought under 42 U.S.C. § 1983 against Defendant Jennifer Clemons-Abdullah in her individual capacity.

233.    At all relevant times, Abdullah was the Commissioner of the St. Louis Division of Corrections acting under color of state law and was responsible for supervising, training, disciplining, staffing, equipping, managing, controlling, and implementing policies for Justice Center personnel and operations.

234.    Abdullah had authority and responsibility over policies, practices, customs, staffing, training, emergency response systems, detainee observation systems, suicide prevention systems, medical response coordination, medical contractor coordination, emergency equipment access, and EMS access procedures at the Justice Center.

235.    At all relevant times, Kelly had clearly established constitutional rights as a pretrial detainee to reasonable safety, protection from known or obvious risks of serious harm, and adequate medical care, including the right to be free from deliberate indifference to serious medical needs, suicide/self-harm risks, and life-threatening medical emergencies.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

236.    Abdullah knew, or had actual notice of facts showing, that detainees at the Justice Center faced substantial risks of serious harm and death from inadequate supervision, inadequate cell checks, inadequate staffing, inadequate suicide prevention practices, inadequate medical response, inadequate emergency equipment, inadequate EMS access, inadequate contractor coordination, and inadequate investigation and correction of prior failures.

237.    Abdullah had actual notice of those risks through prior incidents, detainee deaths, medical emergencies, internal reports, public reporting, staffing issues, grievances, correctional deficiencies, medical response issues, medical contractor issues, investigation materials, and/or other information available to her.

238.    Despite such knowledge or notice, Abdullah failed to take reasonable measures to correct known or obvious deficiencies.

239.    Abdullah's failures include the acts and omissions previously pleaded herein and particularly one or more of the following:

a.      failing to implement constitutionally adequate suicide prevention policies;

b.      failing to implement constitutionally adequate emergency medical response policies;

c.      failing to require adequate unit supervision;

d.      failing to require adequate cell checks and sign of life checks;

e.      failing to ensure adequate policies for officer breaks and unit coverage;

f.      failing to train correctional staff to respond to hanging/asphyxia emergencies;

g.      failing to train correctional staff concerning CPR, emergency response, EMS notification, and EMS access;

h.      failing to ensure that emergency equipment and emergency procedures were available and usable;

i.      failing to ensure immediate EMS access to secured units;

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

j.      failing to adequately supervise and discipline personnel who failed to perform rounds, supervise units, respond to emergencies, or provide care;

k.      failing to correct known staffing deficiencies;

l.      failing to correct known medical response and contractor coordination deficiencies;

m.      failing to investigate prior deaths, emergencies, and response failures in a manner reasonably calculated to prevent future constitutional violations; and

n.      failing to correct customs and practices that made constitutional violations likely.

240.    Abdullah's liability is not based on respondeat superior alone.

241.    Abdullah's own conduct, deliberate choices, failures to act, and deliberate indifference caused or contributed to cause the violation of Kelly's constitutional rights to reasonable safety, protection from known or obvious risks of serious harm, and adequate medical care.

242.    Abdullah's deliberate indifference directly and proximately caused or contributed to cause Kelly's injuries, suffering, loss of oxygen, brain injury, cardiac arrest, respiratory arrest, hospitalization, life support, deprivation of constitutional rights, death, and/or loss of a substantial chance of survival or better medical outcome.

243.    Since Abdullah acted with reckless or callous indifference to Kelly's federally protected rights, Plaintiffs are entitled to punitive damages against Abdullah in her individual capacity.

244.    Plaintiffs are entitled to damages, attorney's fees, and costs under 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiffs pray for judgment against Defendant Jennifer Clemons-Abdullah, in her individual capacity, on Count X in an amount fair and reasonable and in excess of Twenty Five Thousand Dollars ($25,000.00), together with punitive damages, attorney's fees

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

under 42 U.S.C. § 1988, costs, interest, and such other and further relief as the Court deems just and proper.

## COUNT XI – VIOLATION OF 42 U.S.C. § 1983/FOURTEENTH AMENDMENT MUNICIPAL LIABILITY/MONELL
**(against Defendant City of St. Louis)**

COMES NOW Plaintiffs, by and through counsel, and for Count XI of their First Amended Petition against Defendant City of St. Louis state to the Court as follows:

245.    Plaintiffs reallege and incorporate by reference the averments of paragraphs 1 through 244 as if fully set forth herein.

246.    This Count XI is brought under 42 U.S.C. § 1983 against City for violation of Kelly's rights under the Fourteenth Amendment to the United States Constitution.

247.    At all relevant times, Kelly was a pretrial detainee with constitutional rights to reasonable safety, adequate medical care, protection from known or obvious risks of serious harm, and freedom from deliberate indifference to serious medical needs.

248.    At all relevant times, City acted under color of state law.

249.    Plaintiffs do not sue City under Count XI on a respondeat superior theory.

250.    City's customs, practices, and known deficiencies at the Justice Center included inadequate unit supervision, inadequate cell checks and sign-of-life checks, inadequate response to detainee warnings, inadequate officer-break and unit-coverage policies, inadequate emergency-response procedures, delayed EMS access through secured jail areas, inadequate correctional/medical coordination, and failure to correct known jail-safety and medical-response problems.

251.    City knew, had notice, or the risks were so obvious that knowledge may be inferred, that the deficiencies described in paragraph 250 created a substantial risk that detainees would not receive timely discovery, rescue, ventilation, oxygenation, EMS access, emergency medical care, and protection from known or obvious risks of serious harm.

43

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

252. City's official policies, unofficial customs, widespread practices, failures to train, failures to supervise, failures to discipline, failures to staff, failures to equip, failures to investigate, failures to correct known deficiencies, and deliberate indifference were the moving force behind the violation of Kelly's Fourteenth Amendment rights and directly and proximately caused or contributed to cause Kelly's loss of oxygen, brain injury, other injuries, and death.

253. At all relevant times, City had final policymaking authority over the Justice Center through its authorized policymakers, including the Department of Public Safety, Division of Corrections, Commissioner of Corrections, and other officials with policymaking authority.

254. City maintained unconstitutional policies, customs, and practices as previously pleaded herein and more particularly including one or more of the following:

a. failing to ensure adequate observation and supervision of detainees;

b. failing to ensure adequate officer presence and housing unit coverage;

c. failing to ensure adequate cell checks and sign of life checks;

d. failing to ensure adequate response to detainee calls, intercoms, yelling, warnings, and requests for help;

e. failing to ensure adequate suicide prevention practices;

f. failing to ensure adequate emergency medical response;

g. failing to train correctional staff to immediately respond to hanging, asphyxia, respiratory arrest, and cardiac-arrest emergencies;

h. failing to ensure correctional staff could timely summon medical staff and EMS;

i. failing to ensure prompt EMS access through secured doors, elevators, sally ports, and housing units;

j. failing to ensure adequate medical contractor coordination;

k. failing to maintain adequate staffing;

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

l. failing to ensure functioning emergency communication systems, emergency access procedures, emergency medical equipment, and/or emergency response systems;

m. failing to discipline staff for failing to perform rounds, supervise units, respond to emergencies, or provide emergency care;

n. failing to investigate prior deaths and medical emergencies in a manner reasonably calculated to correct constitutional deficiencies;

o. failing to correct known patterns of delayed response, inadequate care, inadequate supervision, and inadequate staffing; and

p. tolerating customs and practices that allowed detainees' serious medical needs and emergency warnings to be ignored or delayed.

255. City had actual or constructive notice that its policies, customs, practices, and failures were constitutionally deficient.

256. City's notice included prior detainee deaths, prior medical emergencies, prior suicide and self-harm risks, prior staffing issues, prior correctional deficiencies, prior emergency response failures, public reporting, internal communications, grievances, investigations, and/or other information available to City policymakers.

257. City's unconstitutional customs, practices, and failures were not isolated. On information and belief, before Kelly's death, City had notice through prior detainee deaths, prior self-harm incidents, prior medical emergencies, prior delayed response incidents, staffing deficiencies, grievances, internal reports, public reporting, investigations, and correctional health concerns that detainees at the Justice Center faced a substantial risk of serious harm from inadequate supervision, delayed emergency response, inadequate medical coordination, delayed EMS access, and failure to correct known deficiencies.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

258.    The risk of constitutional injury was obvious because detainees in a jail are wholly dependent on City for reasonable safety, protection from known or obvious risks of serious harm, medical care, emergency response, suicide prevention, EMS access, and lifesaving care.

259.    The need to train, staff, supervise, equip, and coordinate correctional personnel to respond immediately to a hanging/asphyxia/cardiac arrest emergency was so obvious that failure to do so constituted deliberate indifference.

260.    City's policies, customs, practices, and failures were the moving force behind the violation of Kelly's constitutional rights.

261.    City's policies, customs, practices, and failures directly and proximately caused or contributed to cause Kelly's injuries, suffering, loss of oxygen, brain injury, cardiac arrest, respiratory arrest, hospitalization, life support, deprivation of constitutional rights, death, and/or loss of a substantial chance of survival or better medical outcome.

262.    Plaintiffs are entitled to damages, attorney's fees, and costs under 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiffs pray for judgment against Defendant City of St. Louis on Count XI in an amount fair and reasonable and in excess of Twenty Five Thousand Dollars ($25,000.00), together with attorney's fees under 42 U.S.C. § 1988, costs, interest, and such other and further relief as the Court deems just and proper.

### COUNT XII – VIOLATION OF 42 U.S.C. § 1983 / FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
(against PC USA Staff in their individual capacities)

COMES NOW Plaintiffs, by and through counsel, and for Count XII of their First Amended Petition against Defendants Marietta Freeman, Khadijah Ghani, Tiffany Fisher, Karen Carpenter, and Doe/Unknown PC USA Staff, in their individual capacities, state to the Court as follows:

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

263. Plaintiffs reallege and incorporate by reference the averments of paragraphs 1 through 262 as if fully set forth herein.

264. This Count XII is brought under 42 U.S.C. § 1983 against the PC USA Staff in their individual capacities.

265. At all relevant times, Kelly as a pretrial detainee had clearly established constitutional rights to adequate medical care and to be free from deliberate indifference to serious medical needs and life-threatening medical emergencies.

266. At all relevant times, PC USA Staff acted under color of state law because they performed the City's constitutional obligation to provide medical and emergency medical care to detainees confined at the Justice Center, participated in joint activity with the City and its correctional staff, provided medical services inside the City's secured jail facility, and were integrated into the Justice Center's correctional and emergency response system.

267. Kelly suffered an objectively serious medical need, including hanging, asphyxia, respiratory arrest, cardiac arrest, unconsciousness, pulselessness, apnea, loss of oxygen, brain injury, and imminent risk of death.

268. Kelly's need for immediate medical care was obvious to a layperson and to PC USA Staff because Kelly was hanging or had been hanging, was unresponsive, pulseless, apneic, bleeding, unconscious, or otherwise in obvious medical distress.

269. PC USA Staff knew, or the need was so obvious that actual knowledge may be inferred, that Kelly required immediate, continuous, and effective CPR, airway management, ventilation, oxygenation, AED/defibrillator use, emergency medication, emergency equipment, EMS coordination, and rapid transport.

270. At the time of the occurrence, PC USA Staff knew, or the constitutional risk was so obvious that actual knowledge may be inferred, that delaying, denying, or failing to provide

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

such emergency medical care created a substantial risk of serious injury or death and violated Kelly's clearly established Fourteenth Amendment rights.

271.    Despite knowledge of Kelly's serious medical need, PC USA Staff deliberately disregarded that need.

272.    PC USA Staff acted with deliberate indifference as previously pleaded herein and more particularly in one or more of the following respects:

a.    failing to timely and adequately assess Kelly;

b.    failing to timely and adequately provide emergency medical care;

c.    failing to timely and effectively perform, assist with, or coordinate CPR;

d.    failing to timely and effectively ventilate, bag, oxygenate, and manage Kelly's airway;

e.    failing to identify, correct, or replace defective, cracked, unavailable, or ineffective emergency equipment;

f.    failing to timely and properly use or coordinate use of the AED/defibrillator;

g.    failing to timely provide or obtain effective airway equipment, a functioning bag valve mask, oxygen, and related emergency supplies;

h.    failing to timely provide or coordinate emergency medication;

i.    failing to timely communicate Kelly's condition and emergency needs to correctional staff and EMS;

j.    failing to timely summon, coordinate, or facilitate EMS intervention;

k.    failing to follow known emergency medical and resuscitation procedures;

l.    failing to provide constitutionally adequate medical care under the circumstances

m.    by the acts and/or omissions alleged herein, individually and/or cumulatively; and

n.    otherwise acting with deliberate indifference as discovery may show.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

273. The conduct of the PC USA Staff was more than negligence and more than gross negligence.

274. The conduct of the PC USA Staff constituted deliberate indifference, reckless disregard, and callous indifference to Kelly's serious medical needs and federally protected rights.

275. Each PC USA Staff is liable only for that Defendant's own acts, omissions, knowledge, deliberate indifference, and personal involvement in the violation of Kelly's constitutional rights.

276. The deliberate indifference of PC USA Staff delayed Kelly's ventilation, oxygenation, resuscitation, emergency medical treatment, EMS coordination, and transport.

277. The deliberate indifference of PC USA Staff directly and proximately caused or contributed to cause Kelly's injuries, pain and suffering, loss of oxygen, brain injury, cardiac arrest, respiratory arrest, hospitalization, life support, deprivation of constitutional rights, death, and/or loss of a substantial chance of survival or better medical outcome.

278. Since PC USA Staff acted with reckless or callous indifference to Kelly's federally protected rights, Plaintiffs are entitled to punitive damages against PC USA Staff in their individual capacities.

279. Plaintiffs are entitled to damages, attorney's fees, and costs under 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiffs pray for judgment against Defendants Marietta Freeman, Khadijah Ghani, Tiffany Fisher, Karen Carpenter, and Doe/Unknown PC USA Staff, in their individual capacities, on Count XII in an amount fair and reasonable and in excess of Twenty Five Thousand Dollars ($25,000.00), together with punitive damages, attorney's fees under 42 U.S.C. § 1988, costs, interest, and such other and further relief as the Court deems just and proper.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

### COUNT XIII – VIOLATION OF 42 U.S.C. § 1983 / FOURTEENTH AMENDMENT POLICY, CUSTOM, FAILURE TO TRAIN, FAILURE TO STAFF, FAILURE TO EQUIP, AND FAILURE TO SUPERVISE
**(against Defendant Physician Correctional USA (MO.), LLC)**

COMES NOW Plaintiffs, by and through counsel, and for Count XIII of their First Amended Petition against Defendant Physician Correctional USA (MO.), LLC state to the Court as follows:

280.    Plaintiffs reallege and incorporate by reference the averments of paragraphs 1 through 279 as if fully set forth herein.

281.    This Count XIII is brought under 42 U.S.C. § 1983 against PC USA for violation of Kelly's rights under the Fourteenth Amendment to the United States Constitution.

282.    At all relevant times, PC USA was a person for purposes of 42 U.S.C. § 1983.

283.    At all relevant times, PC USA acted under color of state law because it performed the City's constitutional obligation to provide medical care, mental-health care, screening, crisis response, emergency medical care, and related correctional-health services to detainees confined at the Justice Center.

284.    PC USA performed functions delegated by the City, participated in joint activity with the City and its correctional staff, provided medical and emergency-response services inside the City's secured jail facility, and was integrated into the Justice Center's correctional and emergency-response system.

285.    PC USA is not sued under Count XIII solely on a respondeat superior theory.

286.    PC USA was responsible for providing, staffing, supervising, training, equipping, and implementing the medical and emergency-response functions at the Justice Center, including the response to detainee medical emergencies, mental health emergencies, suicide attempts, self-harm incidents, hanging, asphyxia, respiratory arrest, cardiac arrest, and other life-threatening conditions.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

287.    PC USA maintained, permitted, and acted under policies, customs, practices, and systemic failures that caused detainees with serious medical needs to be inadequately assessed, monitored, treated, escalated, and referred for emergency medical care.

288.    PC USA maintained unconstitutional policies, customs, or practices, as previously pleaded herein and more particularly including one or more of the following:

a.    failing to ensure prompt medical response to detainee emergencies;

b.    failing to ensure medical staff could respond effectively to hanging, asphyxia, respiratory arrest, and cardiac-arrest emergencies;

c.    failing to adequately train medical staff in CPR, ventilation, airway management, oxygenation, AED use, emergency medication, emergency equipment use, and EMS coordination;

d.    failing to adequately train medical and mental health staff in suicide prevention, self-harm risk, crisis intervention, and detainee mental health emergencies;

e.    failing to ensure adequate medical staffing at the Justice Center;

f.    failing to ensure adequate emergency equipment, supplies, crash carts, AEDs, bag valve masks, airway equipment, oxygen, and emergency medication;

g.    failing to ensure emergency equipment was inspected, maintained, functioning, and ready for use;

h.    failing to train staff to identify and replace defective, cracked, unavailable, or ineffective emergency equipment;

i.    failing to coordinate with correctional staff and EMS;

j.    failing to ensure immediate medical access to detainees in secured housing units;

k.    failing to supervise medical staff;

l.    failing to discipline or correct deficient emergency response practices;

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

m.     failing to investigate prior medical emergencies, equipment failures, response failures, and detainee deaths in a manner reasonably calculated to prevent future constitutional violations; and

n.     otherwise maintaining policies, customs, and practices that caused detainees' serious medical needs to be ignored, delayed, or inadequately treated.

289.    PC USA knew, or the risk was obvious, that detainees at the Justice Center could suffer suicide attempts, self-harm, hanging, asphyxia, respiratory arrest, cardiac arrest, and other life-threatening emergencies requiring immediate medical response.

290.    PC USA knew, or the risk was obvious, that failure to provide prompt ventilation, oxygenation, CPR, emergency medication, functioning emergency equipment, and EMS coordination would create a substantial risk of death.

291.    PC USA had actual or constructive notice of the need for adequate policies, staffing, training, supervision, equipment, and emergency response systems through its contract, correctional health responsibilities, prior incidents, detainee needs, medical standards, and the obvious risks inherent in providing medical care in a secured jail.

292.    Despite PC USA's knowledge and the obvious risk of harm, PC USA failed to adopt, implement, enforce, train on, supervise, staff, equip, investigate, discipline, and correct policies, practices, and procedures necessary to ensure timely and adequate medical response to detainee emergencies.

293.    PC USA's policies, customs, practices, systemic failures, and deliberate indifference caused Kelly not to receive timely and adequate medical assessment, monitoring, emergency response, ventilation, oxygenation, CPR, emergency treatment, EMS coordination, and/or transfer for emergency medical care.

294.    PC USA's policies, customs, practices, and failures were the moving force behind the violation of Kelly's constitutional rights.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

295.     As a direct and proximate result of PC USA's policies, customs, practices, systemic failures, and deliberate indifference, Kelly suffered deprivation of oxygen, brain injury, respiratory arrest, cardiac arrest, hospitalization, life support, pain, suffering, deprivation of constitutional rights, death, and damages.

296.     PC USA caused or contributed to cause Kelly's injuries, death, and damages.

297.     Plaintiffs are entitled to damages, attorney's fees, and costs under 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiffs pray for judgment against Defendant Physician Correctional USA (MO.), LLC on Count XIII in an amount fair and reasonable and in excess of Twenty Five Thousand Dollars ($25,000.00), together with attorney's fees under 42 U.S.C. § 1988, costs, interest, and such other and further relief as the Court deems just and proper.

## COUNT XIV – APPLICATION OF JOINT AND SEVERAL LIABILITY, VICARIOUS LIABILITY, AGENCY LIABILITY, MUNICIPAL LIABILITY, AND JUDGMENT LIABILITY
### (all Defendants)

COMES NOW Plaintiffs, by and through counsel, and for Count XIV of their First Amended Petition against all Defendants state to the Court as follows:

298.     Plaintiffs reallege and incorporate by reference the averments of paragraphs 1 through 297 as if fully set forth herein.

299.     Plaintiffs plead Count XIV as an application of Missouri and federal law governing judgment liability, joint and several liability, indivisible injury, concurrent causation, vicarious liability, agency liability, and recovery for indivisible injuries.

300.     Kelly suffered a single, indivisible injury and death caused or contributed to by the combined, concurrent, successive, and overlapping acts and omissions of Defendants.

301.     The acts and omissions of Defendants combined, concurred, and contributed to cause Kelly's injuries, loss of oxygen, brain injury, cardiac arrest, respiratory arrest, hospitalization, life support, constitutional injury, and death.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

302.     Each Defendant whose fault, acts, omissions, deliberate indifference, policy, custom, practice, negligence, or legally responsible conduct caused or contributed to cause Kelly's indivisible injuries and death is liable to the extent permitted by Missouri law, federal law, 42 U.S.C. § 1983, 42 U.S.C. § 1988, RSMo § 537.067, RSMo § 537.080, and all other applicable law.

303.     To the extent any Defendant is found to bear fifty one percent (51%) or more of fault under Missouri law, that Defendant is jointly and severally liable for the amount of the judgment authorized by law.

304.     To the extent any Defendant is vicariously liable for the acts or omissions of its employees, agents, servants, representatives, contractors, or apparent agents, such Defendant is liable for those acts and omissions to the full extent permitted by law.

305.     PC USA is vicariously liable for the acts and omissions of its employees, agents, servants, representatives, contractors, and/or apparent agents, including Freeman, Ghani, Fisher, Carpenter, Doe/Unknown PC USA Staff, and other PC USA Staff, to the full extent permitted by law.

306.     The City is liable for the acts, omissions, policies, customs, practices, and constitutional violations for which municipal liability is available under 42 U.S.C. § 1983 and applicable law.

307.     Plaintiffs do not plead Count XIV as a separate tort independent of the substantive claims alleged above, but as an application of the legal principles governing liability, apportionment, judgment, and recovery for Kelly's indivisible injuries and death.

WHEREFORE, Plaintiffs pray that the Court apply joint and several liability, vicarious liability, agency liability, municipal liability, § 1983 liability, and all other applicable principles of Missouri and federal law to any judgment entered in this action, and award Plaintiffs all damages, costs, attorney's fees, interest, and other relief permitted by law.

Electronically Filed - CITY OF ST. LOUIS - July 14, 2026 - 12:15 PM

**SPOONER LAW, LLC**


By: /s/ *Jack B. Spooner*
Jack B. Spooner    #38382
34 N. Brentwood Blvd., Suite 210
Saint Louis, Missouri 63105
Telephone:   (314) 725-4300
Facsimile:    (314) 725-4301
Email:   jbs@spoonerlawllc.com
***Attorneys for Plaintiff Nash***


## CERTIFICATION UNDER RULE 55.03(A)

Pursuant to Rule 55.03(a), Jack B. Spooner certifies that he signed an original of this pleading and that an original of this pleading shall be maintained for a period not less than the maximum allowable time to complete the appellate process.

/s/  *Jack B. Spooner*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 16, 2026, the foregoing was filed electronically with the Clerk of the Court and served on all counsel of record by operation of the Court's electronic filing system.

/s/  *Jack B. Spooner*